## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-03093-RGK (MANx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | ***MARKET LOFTS COMMUNITY ASSOCIATION v. NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.*** | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS) Order re: Defendant's Motion to Dismiss (DE 15); Plaintiff's Motion for Partial Summary Judgment (DE 19)**

### I.    INTRODUCTION

On April 4, 2014, Market Lofts Community Association (the "Association") filed a Complaint against its insurer, National Union Fire Insurance Company of Pittsburgh, PA ("Defendant"), seeking coverage for claims brought against the Association's members in California state court. The Complaint lists claims for: (1) declaratory relief; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing.

Presently before the Court are (1) Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6); and (2) the Association's Motion for Partial Summary Judgment (the "Association's MSJ") as to the declaratory relief claim. For the following reasons, the Court **DENIES** Defendant's Motion to Dismiss, and **GRANTS** the Association's MSJ.

### II.    FACTUAL BACKGROUND

The parties do not dispute the pertinent facts.

The Association is a non-profit mutual-benefit corporation formed for the benefit of condominium owners (the "Association Members") at a mixed-use development in downtown Los Angeles.

Defendant issued a Directors' & Officers' Liability Policy (the "Policy") to the Association, effective from June 22, 2011 to April 8, 2012. (Compl. ¶ 9, Ex. 1 ("Policy").) The Policy provides liability coverage for the Association and for "Individual Insureds," which include past, present, and future members of its Board of Directors (the "Association's Board").

On November 2, 2011, the Association sued 9th Street Market Lofts, LLC (the "Developer"), CIM 830 S. Flower, Inc. (the "Garage Owner"), and others, including three former members of the Association's Board (the "Former Board Members") in the Superior Court for the County of Los Angeles (the "Underlying Action"). (Compl. ¶ 12; Snook Decl., Ex. 6.) The Association alleged that the Developer had charged the Association Members a monthly parking fee in violation of its agreement to grant parking rights to the Association at no cost. (Compl. ¶¶ 13, 15; Snook Decl., Ex. 6.)

On January 16, 2012, the Former Board Members, who qualify as Individual Insureds under the Policy, gave Defendant notice of the Underlying Action. (Compl. ¶ 26, Ex. 3.) Defendant denied coverage to the Former Board Members, who then brought suit against Defendant. *See Jeffrey Lee v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, CV 14-2396 GHK (MRWx) (C.D. Cal. July 9, 2014) (ECF No. 28). The court upheld Defendant's denial of coverage on the ground that the Policy excluded coverage for claims brought by the Association against Individual Insureds. *Id.*

On August 22, 2012, the Association filed a second amended complaint in the Underlying Action. The Association alleged claims for declaratory relief, breach of fiduciary duty, breach of a parking license agreement, concealment, unfair business practices, and rescission of a parking sublicense agreement. The Developer filed a demurrer to the second amended complaint, which the trial court sustained without leave to amend on the ground that the Association lacked standing to sue. The California Court of Appeals reversed the trial court's judgment, holding that the Association had standing (1) as the real party in interest as to its contract claims; and (2) as a representative of the Association Members as to its other claims. *Mkt. Lofts Cmty. Ass'n v. 9th Street Mkt. Lofts, LLC*, 222 Cal. App. 4th 924, 927 (2014), *as modified on denial of reh'g* (Feb. 4, 2014), *review denied* (Apr. 23, 2014).

On September 25, 2014, the Developer and the Garage Owner (collectively, "Cross-Complainants") filed a cross-complaint (the "Cross-Complaint") naming approximately 300 Association Members as defendants. (Compl. ¶ 14, Ex. 2 ("Cross-Compl.").) The Cross-Complaint lists claims for: (1) declaratory relief as to the real party in interest; (2) declaratory relief as to rights under a parking license agreement; (3) unjust enrichment with respect to the Developer; (4) unjust enrichment with respect to the Garage Owner; and (5) promissory estoppel. (Cross-Compl. ¶¶ 27-57.)

Cross-Complainants allege that the Developer and the Association executed a sublicense agreement under which the Association agreed to pay a fee in exchange for parking rights. (Cross-Compl. ¶¶ 13-15.) Cross-Complainants further allege that: (1) each Association Member or original purchaser entered into written purchase agreements with the Developer; (2) in the written purchase agreements, each Association Member or original purchaser acknowledged restrictions set forth in the Association's covenants, conditions and restrictions ("CC & R's"); and (3) the CC & R's "specifically referenced" the obligation to pay parking costs outlined in the sublicense agreement. (Cross-Compl. ¶¶ 18, 21.)

On October 3, 2014, the Association's insurance broker sent an email to Defendant. (Compl., Ex. 4.) The email included a copy of the Cross-Complaint, and stated, "This matter is still alive and I'd like to request that you take a look at the attached documents and see if there is any change in your coverage opinion now that every unit owner in [the Association] has been named in a cross complaint." (Compl., Ex. 4.)

On December 2, 2014, Defendant sent a letter to the Former Board Members. (Compl., Ex. 5.) In that letter, Defendant stated that the Policy does not provide coverage for the Cross-Complaint because: (1) the Cross-Complaint does not assert any causes of action against the Former Board Members; and (2) the Association Members are not Insureds under the Policy. (Compl., Ex. 5 at 2-3.) The Association's insurance broker was copied on that letter. (Compl., Ex. 5.)

## III.   JUDICIAL STANDARD

### A.   Motion to Dismiss Pursuant to Rule 12(b)(6)

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2004)). A court deciding a 12(b)(6) motion must accept as true all factual allegations in the complaint, but need not accept mere legal conclusions or bare recitations of the elements of a claim. *Twombly*, 550 U.S. at 555. A claim is facially plausible when there are sufficient factual allegations, viewed in the light most favorable to the plaintiff, to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

### B.   Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper only upon a showing that "there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such showing, the court may grant summary judgment "on all or part of the claim." *Id.*

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.*

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV.   DISCUSSION

Defendant argues that the Court should dismiss the Association's Complaint with prejudice because Defendant does not owe a duty to defend the Association in the Underlying Action, and thus all of the Association's claims fail. In contrast, the Association argues that it is entitled to summary judgment on its first claim because there is a potential for coverage which requires Defendant to defend. For the following reasons, the Court agrees with the Association that Defendant owes a duty to defend the Association.

Under a liability policy, an insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966) (emphasis in original). To determine whether an insurer owes a duty to defend, a court must compare the allegations in the underlying complaint with the terms of the policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy . . . ." *Id.* Thus, "the existence of a duty to defend turns not upon the ultimate adjudication of coverage under [the policy], but upon those facts known by the insurer at the inception of a third party lawsuit. Hence, the duty may exist even where coverage is in doubt and ultimately does not develop." *Id.* (internal quotations and alterations omitted).

Interpretation of the terms of an insurance policy is a question of law governed by rules of contract interpretation. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003). Absent an ambiguity, "[t]he 'clear and explicit' meaning of these [terms], interpreted in their 'ordinary and popular sense' . . . controls judicial interpretation." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821 (1990) (citations omitted). An ambiguity arises when a material term of the policy is reasonably capable of two or more constructions in the context of the policy as a whole and the circumstances of the case. *Penn-Am. Ins. Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884, 889 (2005). "A claim of ambiguity cannot always be decided from the face of the [language]. It may be latent." *Id.* In the insurance context, courts construe ambiguities in favor of coverage in order to protect the insured's reasonable expectation of coverage. *MacKinnon*, 31 Cal. 4th at 647, 652.

Here, to establish that the Policy covers the Underlying Action, the Association must show: (1) a "Claim"; (2) that the Claim was "made against" the Association; (3) that the Claim was based upon or arose out of a "Wrongful Act" by the Association; (4) that the Claim would potentially result in "Loss" to the Association; and (5) that the Claim was made during the Policy Period and reported to Defendant.

The Court will first address the Association's declaratory relief claim as to Defendant's duty to defend the Association, then will address the Association's claims for breach of contract and breach of the covenant of good faith and fair dealing.

## A.      Declaratory Relief: Defendant's Duty to Defend the Association

Defendant argues that the Court should dismiss the Association's declaratory relief claim because there is no potential for coverage as to the Association. The Association counters that it is entitled to summary judgment on its declaratory relief claim because there is a potential for coverage which requires Defendant to defend the Association. The parties do not dispute the material facts. The Court agrees with the Association and will address each coverage element in turn.

### 1.      *Claim*

Under the Policy, a Claim is "a civil . . . proceeding for monetary, non-monetary or injunctive relief which is commenced by service of a complaint or similar pleading." (Policy, at 30.)

In the Underlying Action, the Cross-Complaint requests both monetary and non-monetary relief. Accordingly, the Underlying Action qualifies as a "Claim" within the meaning of the Policy.

### 2.      *Claim "Made Against" the Association*

The Policy provides that Defendant "shall pay on behalf of the [Association] Loss arising from a Claim first *made against* the [Association] . . . ." (Policy, at 9 (emphasis added).) Defendant argues that the Cross-Complaint is not a Claim "made against" the Association because the plain meaning of the Policy requires that the Association be a named defendant in order for a Claim to be made against it.

The Association counters that a Claim "made against" it can be reasonably interpreted to include not only complaints naming the Association as a defendant, but also complaints which the Association has a statutory right to defend and which names the Association Members as defendants in an improper attempt to circumvent the Association's interest.

Defendant relies on a First Circuit case applying Maine law, which states that "[b]oth plain meaning and common usage require that, in order for a judicial complaint to be 'made against' a person, that complaint must be filed in court and must identify the person as a defendant in the action." *Med. Mut. Ins. Co. of Me. v. Indian Harbor Ins. Co.*, 583 F.3d 57, 62 (1st Cir. 2009). But under California law, "[a] claim of ambiguity cannot always be decided from the face of the [language]." *Penn-Am. Ins. Co.*, 125 Cal. App. 4th at 889. "The proper question is whether the [provision or] word is ambiguous in the context of *this* policy and the circumstances of *this* case." *Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.*, 186 Cal. App. 4th 556, 567 (2010) (emphasis in original). Thus, the Court now considers the circumstances of the Underlying Action to determine whether the Association's interpretation of the Policy language is reasonable.

### a.  *The Association Has a Statutory Right to Defend the Cross-Complaint*

The Association has a statutory right to defend the Cross-Complaint under two California statutes: (1) California Civil Code Section 5980; and (2) California Civil Procedure Code Section 382.

California Civil Code Section 5980 provides in part that "[a]n association has standing to institute, defend, settle, or intervene in litigation, arbitration, mediation, or administrative proceedings in its own name as the real party in interest and without joining with it the members, in matters pertaining to . . . [e]nforcement of the governing documents." An "association" is defined as a "nonprofit corporation or unincorporated association created for the purpose of managing a common interest development." Cal. Civ. Code § 4080. "The primary governing document of the association is the declaration—the document that contains a legal description of the development and 'the restrictions on the use or enjoyment of any portion of the common interest development that are intended to be enforceable equitable servitudes.' This document is frequently referred to as the 'covenants, conditions, and restrictions,' or the 'CC & R's.'" *Ostayan v. Nordhoff Townhomes Homeowners Ass'n, Inc.*, 110 Cal. App. 4th 120, 127 (2003) (quoting Cal. Civ. Code § 1353).

Here, the Association is a nonprofit corporation created for the purpose of managing a common interest development. In addition, the allegations in the Cross-Complaint relate to the enforcement of the Association's CC & R's. For example, the Cross-Complaint alleges that "Cross-Defendants, and each of them, promised to pay, through the Association, the Sub-License Fee *as outlined in the CC&Rs* . . . ." (Cross-Compl. ¶ 55 (emphasis added).) Thus, California Civil Code Section 5980 grants the Association the right to defend the Cross-Complaint.

Furthermore, California Code of Civil Procedure Section 382 provides in part that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." "The two requirements that must be satisfied for a representative action [under this statute] are an ascertainable class and a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented." *Mkt. Lofts Cmty. Ass'n*, 222 Cal. App. 4th at 933.

The appellate court in the Underlying Action found that the Association Members, as homeowners, are "plainly an ascertainable class." *Id.* It also found "a well-defined community of interest concerning the relevant questions of law and fact" in respect to the Association's complaint because "[e]ach homeowner is subject to the same parking charges and any invalidity of the [parking

license agreement] would affect the homeowners in the same manner." *Id.* The Cross-Complaint involves the same parking charges and parking license agreement. Thus, the appellate court's reasoning applies here as well. Accordingly, the Association may defend the Cross-Complaint for the benefit of the Association Members.

b.    *The Policy is Ambiguous*

As noted above, a "policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "[A]n interpretation in favor of coverage is reasonable only if it is consistent with the objectively reasonable expectations of the insured." *Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006).

Here, the Court finds that in the context of the Policy and the circumstances of the Underlying Action, the term "made against" is ambiguous because it is capable of two reasonable constructions. First, this term would plainly cover a complaint which names the Association as a defendant. Second, the Court agrees with the Association that the term can also reasonably be read to cover a complaint which the Association has a statutory right to defend and which names the Association Members as defendants in what appears to be an improper attempt to circumvent the Association's interest. This reading is bolstered by the fact that the Policy does not include language limiting coverage in actions where the Association exercises its statutory right to defend. *See Fireman's Fund Ins. Cos. v. Atl. Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001) ("[A]n insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage.").

Furthermore, an "insurer cannot avoid coverage simply because the complainant seeks a tactical advantage in the lawsuit." *Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442, 444 (C.D. Cal. 1995); *see also Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1269 (9th Cir. 2010) ("The technical label on a cause of action does not dictate the duty to defend whether the claimed cause of action was omitted out of negligence or for strategic adversarial reasons." (internal quotation marks omitted)). The courts in both *Dobrin* and *Hudson* found that insurers owed a duty to defend their insureds against complaints alleging facts suggesting liability for claims covered under the policy, although the complaints did not specifically allege those claims. *Dobrin*, 897 F. Supp at 444; *Hudson*, 624 F.3d at 1269. While *Dobrin* and *Hudson* are not squarely on point, both are nonetheless instructive in that the courts emphasized that under California law, an insurer's duty to defend is not defined by the manner in which a claimant frames its complaint, but by the facts of the case.

Here, the facts indicate that the Cross-Complaint's claims are directed toward the Association, but the Cross-Claimants named the Association Members for strategic adversarial reasons. This was recognized by the California Superior Court in the Underlying Action, which stated in its ruling granting the Association's demurrer that "[t]he Cross-Complainants' attempt to circumvent the law of the case is improper." (Snook Decl., Ex. 7 at 4.) That court further explained:

> To allow Cross-Complainants to file a cross-complaint against almost each of the individual 319 members would run contrary to the [appellate court]'s determination that the Association is the real party in interest and has standing to defend the action brought against its members. As a public policy matter, it would also be impractical, since it would allow any defendant sued by a representative plaintiff to cross-complain against the individual persons or entities so represented in order to frustrate and complicate the litigation.

(*Id.*)

Defendant contends that *Western Polymer Technology, Inc. v. Reliance Insurance Co.*, 32 Cal. App. 4th 14 (1995), governs. There, the Court held that an insurance company did not have a duty to defend an insured director of a corporation who was not named as a defendant in a suit against the corporation. *Id.* at 28. The court stated that the insurer "did not owe a duty to defend [the director] in a suit to which he was not a party." *Id.* But here, unlike in *Western Polymer*, the unnamed party—the Association—has a right to defend the action on behalf of the named Association Members. Further, the Association *is* a party to the Underlying Action; it is the original plaintiff.

*Alex Robertson Co. v. Imperial Casualty & Indemnity Co.*, 8 Cal. App. 4th 338 (1992), is also distinguishable. There, the court upheld an insurer's denial of coverage to an uninsured third party whom the insured had agreed to indemnify. *Id.* at 347. The court reasoned that because the insured "took no part in the [litigation] of that action," it would not be bound by the resulting judgment. *Id.* Thus, until the uninsured third party sued the insured under the indemnification agreement, there was no potential for liability under the insured's policy. *Id.* Here, the Association is taking part in the litigation of the Underlying Action on behalf of the Association Members, and would be bound by any resulting judgment.

Finding the Policy language ambiguous, the Court must resolve the ambiguity in the Association's favor. *See Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 765 (2001). Therefore, the Court finds that the Cross-Complaint is a Claim "made against" the Association under the terms of the Policy.

### 3.   *Claim Based Upon or Arising Out of Any Actual or Alleged Wrongful Acts*

A "Wrongful Act" as defined by the Policy is "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the [Association]." (Compl., Ex. 1 at 15).

The Cross-Complaint's allegations relate to the Association's failure to follow through on its promise to pay a parking fee to the Cross-Claimants. This is an omission by the Association, and thus qualifies as a Wrongful Act under the Policy. Therefore, the Cross-Complaint is a Claim based upon or arising out of an alleged Wrongful Act by the Association.

### 4.   *Claim Potentially Resulting in Loss to the Association*

Under the Policy, "Loss" includes "damages[,] . . . judgments, settlements, [and] pre- and post-judgment interest . . . ." (Policy, at 12.)

Because the Association exercised its right to defend the Underlying Action on behalf of the Association Members, it would be bound by any resulting judgment. *See Estate of Baumann*, 201 Cal. App. 3d 927, 935 (1988) ("[W]hen a party acts in a representative capacity, and as such is lawfully authorized to litigate the questions at issue for those whom he represents, they *as well as he* are bound by the judgment." (emphasis added)). Accordingly, the Association would incur liability for the damages and prejudgment interest that the Cross-Claimants request in the Cross-Complaint.

Thus, the Cross-Complaint is a Claim potentially resulting in Loss to the Association.

### 5.   *Claim Made During the Policy Period and Reported to Defendant*

Clause 7(a) of the Policy provides that "[t]he Insureds shall, as a condition precedent to the obligations of [Defendant] under this policy, give written notice to [Defendant] of any Claim made

against an Insured as soon as practicable and . . . anytime during the Policy Year . . . ." (Policy, at 20.) The "Policy Year" is June 22, 2011 to April 8, 2012. (Policy, at 3.)

In addition, "[i]f written notice of a Claim has been given to [Defendant] pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to [Defendant] alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given." (Policy, at 20.) The Policy further provides that "Claims can allege [Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts], regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action." (Policy, at 14.)

Here, the Former Board Members gave written notice of the Association's complaint in the Underlying Action to Defendant on January 16, 2012—during the Policy Year. The claims in the Cross-Complaint arise out of the same facts alleged in the Association's complaint in the Underlying Action. Specifically, both relate to the parking licensing agreement between the Association and the Cross-Complainants. Thus, for purposes of coverage, the Cross-Complaint must be considered made on January 16, 2012, during the Policy Year.

Furthermore, the Association's insurance broker gave written notice of the Cross-Complaint to Defendant on October 3, 2014, only eight days after the Cross-Complainants filed the Cross-Complaint. *See Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997) ("[T]he insurer's duty to defend . . . arises as soon as tender is made.").

Therefore, the Claim was made during the Policy Period and reported to Defendant as required under the Policy.

In light of the foregoing, the Association satisfies all elements required to show a potential for coverage under the Policy. Thus, Defendant had a duty to defend the Association in the Underlying Action.

### C.   <u>Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing</u>

Defendant argues that the Court should dismiss the Association's claim for breach of contract and breach of the covenant of good faith and fair dealing. But Defendant's only argument that the Association does not sufficiently allege those claims is that the Association does not have a duty to defend the Underlying Action. As explained in Section IV(A), *supra*, the Court finds that Defendant does have a duty to defend.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss the Association's claims for breach of contract and breach of the covenant of good faith and fair dealing.

## V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss, and **GRANTS** the Association's MSJ.

**IT IS SO ORDERED.**

_____ **:** _____

**Initials of Preparer**                         _____