# EXHIBIT A

3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

MARKET LOFTS COMMUNITY ASSOCIATION, a California corporation,

       Plaintiff,

vs.

                    No. 2:15-cv-3093-RGK (SPx)

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA, a Pennsylvania corporation,

       Defendant.

_____/

VIDEOTAPED DEPOSITION OF GARY GREENFIELD

Taken before Monique Reyes

CSR No. 13927

March 14, 2016

4

I N D E X

PAGE

EXAMINATION BY MR. ROSENBERG                            5

E X H I B I T S

PAGE

DEFENDANT'S

Exhibit 1      Mr. Greenfield's report                21

Exhibit 2      Letter dated 12/11/15                  61

Exhibit 3      Mr. Greenfield's spreadsheet           73

Exhibit 4      AIG letter dated 10/21/15              74

               with Exhibits A-D

Exhibit 5      Notice of motion and motion for        85

               judgment on the pleadings

DEPOSITION OF GARY GREENFIELD

BE IT REMEMBERED, that pursuant to Notice, and on the 14th day of March 2016, commencing at the hour of 10:05 a.m., in the offices of Aiken Welch Court Reporters, One Kaiser Plaza, Suite 250, Oakland, California 94612, before me, Monique Reyes, a Certified Shorthand Reporter, State of California, personally appeared GARY GREENFIELD, produced as a witness in said action, and being by me first duly sworn, was thereupon examined as a witness in said cause.

---oOo---

APPEARANCES

For the Plaintiff:

JAMES A. LOWE, ESQ.
GAUNTLETT & ASSOCIATION
18400 Von Karman. Suite 300
Irvine, California 92601
949.553.1010 Ext. 260
Jal@gauntlettlaw.com

For the Defendant:

LEE J. ROSENBERG. ESQ.
BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, California 90017
213.630.5000
Lrosenberg@bautelaw.com

Also present:   Videographer, Kevin Gogarti

6

P R O C E E D I N G S

THE VIDEOGRAPHER: Good morning.  We are now on the record.  This begins the deposition of Gary Greenfield in the matter of Market Lofts versus National Union Fire Insurance Company, venued in the US District Court for the Central District of California.  Case number 2:15-CV-03093-RJ -- or GK.

Today's date is March 14th, 2016, and the time on the video monitor is 10:05.  The video operator today is Kevin Gogarti.  And this video deposition is being taken place at One Kaiser Plaza in Oakland, California.

Would Counsel please voice identify yourselves and state who you represent.

MR. ROSENBERG:  My name is Lee Rosenberg, Counsel for National Union Fire Insurance Company of Pittsburgh, PA, the Defendant.

MR. LOWE:  I'm James Lowe, Gauntlett & Associates, representing Plaintiff, Market Lofts Community Association.

THE VIDEOGRAPHER: The court reporter today is Monique Reyes of Aiken Welch Court Reporters.

And would you please swear in the witness.

7

GARY GREENFIELD - 03/14/2016          Page 69

A.  So -- so -- let me finish.

Q.  Go ahead.

A.  So in a sense that's vague, it doesn't tell you which it is.  But in this case, depending on the date and so on, you go look at the file.  And you could see, oh, they were drafting for customer admonitions, or you could -- or part -- or they were drafting all three, you can go look at them and you could see what they were doing.

So it wouldn't necessarily -- so, yes.  Is the time entry vague?  Well, it's vague in the sense that for a legal fee analyst, it makes me go do something beyond just look at -- stare at the time entry.  But was it vague in that -- was it communicating to the client which is really what you're talking about here, communicating to their own client who is paying the bill what they were doing, so that if the client wanted to find out they could.  I don't think that's vague.  But some people would say, yeah, it's vague.  It doesn't tell you what kind of discovery it was.

Similarly, another type of entry might be telephone call with -- with so and so.  Is that vague?  Well, some people say that's vague unless you include the subject matter of the telephone call.  Well, depends.

Q.  I'm just asking for purposes of your analysis here in your report when you are concluding that fees

were reasonable and necessary, and you came across an     11:41:13

entry that was vague and you didn't understand.  In that     11:41:16

instance, perhaps, for example, you went and you spoke     11:41:18

with one of the attorneys; correct?     11:41:21

    A.  Yes, I did in certain circumstances.     11:41:22

    Q.  Okay.  So I'm simply asking whether --     11:41:22

    A.  Or -- or I looked -- or I went and looked at the     11:41:25

file.     11:41:27

    Q.  So where -- where you saw an entry that you, in     11:41:27

your mind, you didn't understand or it was too vague, you     11:41:30

went and did some research and tried to figure out what     11:41:33

was going on there?     11:41:36

    A.  In some cases, yes.     11:41:37

    Q.  And were there case where you did not do that?     11:41:39

    A.  I don't -- I don't -- I mean, I don't remember.     11:41:43

There may have been something that -- and I -- I don't     11:41:43

remember.  So -- but there may have been some entry that     11:41:45

was a tenth of an hour for doing something that I didn't     11:41:49

really understand what they were doing, but it was the     11:41:53

only thing that was being done.  I might not have -- in     11:41:56

fact, I probably wouldn't have gone to find out what that     11:41:58

was.     11:42:01

    Q.  Okay.  I'm just asking, you didn't go back for     11:42:01

every single entry where it may have been vague or you     11:42:06

didn't quite understand it and match it up with some     11:42:10

happened other than that they're just there, the entries?    01:36:53

A.  Right.  Right.  There is no -- we -- we have    01:36:58
not -- we didn't provide a report that identifies those    01:37:02
particular entries.  That's correct.    01:37:07

Q.  Okay.  So when you've gone back to do your    01:37:09
further analysis and further aggregation -- or whatever    01:37:16
term you use, what were you -- what are you looking for    01:37:21
to assess in your review whether or not an entry or group    01:37:25
of entries is related or not to the defense of the    01:37:31
cross-complaint?    01:37:35

A.  I will look at the substance of the entry and if    01:37:36
appears to be -- and so I will look at the entry and    01:37:41
think is this something that would -- that would be    01:37:45
something that if you were defending against the    01:37:49
cross-complaint, is this what you would reasonably do?    01:37:54
And if I have a question about that, I will either ask    01:37:58
counsel about it and it may be something that I don't    01:38:03
know -- that I don't know precisely what was going on.    01:38:09
Or I will ask counsel in the underlying case about it.    01:38:12
Or I will go back as I often do, and look in the -- in    01:38:16
the materials in the file.  Often that answers the    01:38:21
question.  Like that would've answered the question with    01:38:23
regard to the motion on the judgment on the pleadings.    01:38:27

Q.  Okay.  And so that work is not -- is not done    01:38:31
yet?    01:38:35

board members is because of the breach of fiduciary duty, among other things.  And the breach of fiduciary duty is part of the defense of the cross-complaint.

Q.  Same -- let's go below.  The next entry is 4/14/2015.  It references dismissal of individual defendants.  Would you -- do you also disagree that that is not -- that -- do you -- do you disagree that that is not related to the homeowner cross-complaint?

A.  It says revise letter re discovery and dismissal of individual defendants.  E-mail sent to Mr. Dakak.  First of all, discovery, I think, is related to both the cross-complaint.  I mean we're not sure what the discovery was.  But I see no indication that it wasn't rel -- that in the discovery I reviewed, appeared to me to be related to the -- both the Complaint and the cross-complaint.  And the dismissal of individual defendants, I assume, is based on some -- their potential liability, like the prior entry was.  So I -- I don't see that as something that is not related to the defense of the cross-complaint.

Q.  How -- how, in your view, would dismissing individual defendants relate to the defense against the cross-complaint?

A.  I -- I'd have to know what the discussion was about.

Q.  My only point is you -- you just sitting here today, you don't -- you don't know; correct?    02:18:22 02:18:25

A.  I don't know what -- what was being -- I don't know what the letters were about dismissal of the individual defendants.  But I see nothing to indicate that it was in some way unrelated to defense of the cross-complaint.    02:18:28 02:18:34 02:18:39 02:18:44 02:18:50

Q.  I'm just saying you don't know?    02:18:52

A.  I -- right.  I don't see anything that indicates that.  That's right.    02:18:56 02:19:00

Q.  Okay.  Let's go to the next Exhibit H.  Many of the entries on this page I saw this -- I'm just going to generally at this moment deal with the issue around freezing of the assets.  You earlier -- you hinted on that you discussed this somewhat with the attorneys.  Can you -- can you describe what these tasks were?  What's the purpose of it -- of these tasks?    02:19:05 02:19:29 02:19:37 02:19:44 02:19:54 02:19:59 02:20:07

A.  You know, I can't tell you anything I didn't testify about already.    02:20:11 02:20:14

Q.  Okay.  So you don't know if this work relating to freezing assets is related to -- not to the cross-complaint?    02:20:19 02:20:28 02:20:31

A.  I didn't say that.  Whatever I testified -- I can't tell you anything beyond what I -- I don't remember exactly what I testified before.  But we -- we went into    02:20:32 02:20:36 02:20:40

freezing assets are related to the defense of the homeowner cross-complaint?

A.  Not beyond to what I've already testified to.

Q.  I -- we don't have LiveNote here.  So I mean -- did you --

A.  I can't tell you anything beyond what I have already testified to.

Q.  So you testified -- whatever you testified earlier, that -- that is an answer to my current question?

A.  Yeah.  It's the extent of my knowledge about what the freezing of assets was about, yes.

Q.  Okay.  But my question is not what you told me earlier.  It's simply, do you know whether freezing assets, whether that work is related to the defense of the cross-complaint?

A.  I can't tell you what I -- beyond what I already just said and what I said earlier -- we're just going around in a circle.

Q.  It's a "yes" or "no" question.

MR. LOWE:  Counsel, you've already asked and answered the question half a dozen times.

THE WITNESS:  I don't know the answer.  I don't know specifically what the freezing assets was about beyond what I've already testified to.

issue of whether discovery prac -- whether it's motion practice or response or review of discovery, particularly early on in 2014 -- early 2015, whether that related to discovery that was propounded before the first cross-complaint was filed.

A.  I did not look at the date of the discovery to determine whether or not the discovery had been served prior to the first cross-complaint.  Even if it had, to the degree that the -- the responding to it or obtaining the information was relevant to the defense of the cross-complaint, maybe that was filed later, it would still be related to the defense of the cross-complaint.

Q.  But that's not an issue you looked at; correct?

A.  I looked at whether it appeared that the discovery was related to both the cross-complaint and the Complaint.  Yes, I did look at that.  I didn't look at this date of when it was served, no.

Q.  Did you look at what the motions to compel, what those -- what discovery -- those motions related to?

A.  One of them I -- I looked at -- looked at the order on one of the motions to compel.  I don't recall looking at the -- at the motions themselves.

Q.  Do you recall what that order -- what discovery that order related to?

A.  There were -- there were -- it appeared to me to

be related to that -- some of it I don't know what it all related to, but I remember discussion of the financial information of the homeowners.  Some of it was just I -- I believe relatively basic information, kind of information you would get in any case either prosecuting the Complaint or defending the cross-complaint.  You know, who the people were, that kind of information.  I remember that I believe the financial information regarding the homeowners was an issue in one of them. The minutes of the relieving of the board, I believe, was an issue in that one.  And, again, I'm basing it on having reviewed the order, not the motions.  That's what -- that's what I remember about that.  And all of that, as I said, are the kind of thing that would relate, in my mind, both to the Complaint and the cross-complaint.

Q.  On page 12 of your report, if you can flip to that.

A.  Okay.

Q.  In the summary section on the second line half the way through, you say that the fees and expenses being sought for reimbursement are reasonable and appropriate. You see that?

A.  Hm-hm.  Yes.  Sorry, yes.

Q.  To be clear, you're not talking about a dollar

REPORTER'S CERTIFICATE

I, Monique Reyes, a Shorthand Reporter, State of California, do hereby certify:

That GARY GREENFIELD, in the foregoing deposition named, was present and by me sworn as a witness in the above-entitled action at the time and place therein specified;

That said deposition was taken before me at said time and place, and was taken down in shorthand by me, a Certified Shorthand Reporter of the State of California, and was thereafter transcribed into typewriting, and that the foregoing transcript constitutes a full, true and correct report of said deposition and of the proceedings that took place;

That before completion of the proceedings, Review of the transcript was requested.

IN WITNESS WHEREOF, I have hereunder subscribed my hand this 22nd day of March 2016.

_____
Monique Reyes, CSR NO. 13927
State of California